UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Joseph Garcia,

                              Plaintiff,

                -Against-

County of Westchester, Village of Pleasantville, New
York, Town of Mt. Pleasant, New York,
Commissioner-Sheriff George N. Longworth, Village
of Pleasantville Former Police Chief Anthony
Chiarlitti, Town of Mount Pleasant Police Chief Louis
Alagno, Police Officer Aaron Hess, Police Officer
Ronald Beckley, Police Officer Paul J. Cusano,
Police Officer Ronald Gagnon, Police Officer Brian
Bosan, Lt. Russell W. Lowenstein, and John Does
#1-30,

                              Defendants.

11-CV-___

COMPLAINT

DOC # ___



Plaintiff, Joseph Garcia, by his attorney Bonita E. Zelman, as and for his

Complaint alleges upon information and belief as follows:

## INTRODUCTION

1.      On October 17, 2010, plaintiff, Joseph Garcia, was a 22 year old Hispanic

American and a senior attending Pace University where he played cornerback on his

college football team.  He and his best friend Danroy (DJ) Henry, Jr. and their team had

played Stonehill College football team October 16, 2010 for the homecoming game.

That night it was about 1:00 AM when DJ, DJ's friend, Brandon Cox, from the Stonehill

team, and Desmond Hinds were waiting in a fire lane outside Finnegan's Grill, a local

restaurant, for two other students to give them a ride home.  They had all been

celebrating homecoming inside with their team members and other college students.

When DJ was told by defendant police officer Ronald Gagnon to move their car, he

1

moved slowly out of the fire lane. Brandon Cox was in the front right passenger seat. Desmond Hinds was sitting in the rear passenger seat. Defendant Aaron Hess jumped in front of their vehicle with his hands in a two hand hold combat stance as he began firing into the car full of students. Defendant Hess continued shooting into the car from the hood of the car.

2.      The car came to rest at the side of the road with DJ Henry slumped in the seat in a pool of blood.   Brandon Cox was shot in the left arm and two bullets barely missed striking Desmond Hinds. Although DJ Henry was still alive, the police did not immediately attend to his bullet wounds and instead handcuffed him behind his back and left him bleeding to death on the pavement.  Brandon Cox was also handcuffed and deprived of immediate medical attention.  Desmond Hinds was forcibly dragged from the rear passenger seat and slammed violently into the pavement causing him to sustain severe head trauma where he was handcuffed behind his back by a white police officer who pressed a gun to the back of his head and then slammed his head back into the pavement.

3.      The shooting and brutality was lawless and without basis, since the African-American young men were following police instructions to leave a fire lane, when defendant Hess jumped in front of a moving car and then he and defendant Ronald Beckley intentionally and deliberately started shooting into a car full of students. DJ and his friends in the car were all unarmed, were not fleeing felons and presented no threat whatsoever to anyone to warrant the deadly force inflicted upon them.

4.      Plaintiff, Joseph Garcia, came out of Finnegan's Restaurant and learned that his friend DJ Henry had been shot by police bullets and was lying in the street and bleeding.  He saw DJ on the pavement and attempted to approach him to aid him.  A

2

white police officer commanded that he "Get the f - - k back".  He complied and walked

back onto the sidewalk when he saw his friend, Desmond Hinds, face down and

handcuffed behind his back in the street.  Plaintiff asked Desmond "What happened?"

and Desmond replied "DJ was shot".  Plaintiff walked back toward DJ and he was again

stopped by a white police officer this time with the police officer's gun pointed directly at

him and he was told "Get the f- - k back".  He feared for his life and walked back toward

the sidewalk.  He saw Daniel Parker telling a white police officer that he knows CPR,

and he heard the white police officer tell Daniel Parker "Get the f- - k back or you'll be

next".  He saw about five police officers grab Daniel Parker who was standing on the

sidewalk and slam him violently against a brick wall.

5.     Plaintiff again tried to walk towards DJ to assist him Two white police

officers stopped him and threatened him to "Get the f - - k back."  He went back onto

the sidewalk where he saw Yves Delpeche with his back against a brick wall with both

his arms up in the air and four officers point tasers and guns at Yves Delpeche. Three

police officers had tasers and one had a gun drawn.  He tried to walk in front of Yves

Delpeche to protect him and about three to four police officers violently slammed his

head, hand and body into a brick wall and he was tasered in the lower back.  The whole

left side of his body was slammed into the brick wall.  He could hear students

screaming in fear.  He was handcuffed behind his back.  He felt police officers punching

him about the upper back.  He was in shock and fearing for his life.  The handcuffs

were put on too tight and he was thrown in the back of a police car.  As he was taken to

the police car he saw DJ still lying on the pavement with DJ's legs trembling and no one

was giving him any medical aid.

6.     Plaintiff kept asking every police officer he saw about the condition of his

3

friend DJ, but they said they had no idea although they all knew he had died.   Plaintiff was fingerprinted and a mug shot taken.

7.     Plaintiff was taken to Westchester County jail and later given a police appearance ticket later on October 17, 2010 at 6:10 A.M. charging "Obstruct governmental administration 2nd degree" by defendant Russell W. Lowenstein of the Westchester County Department of Public Safety.

8.     Thereafter, plaintiff was wrongfully arraigned on November 4, 2010 at the local Criminal Court, Town of Mount Pleasant, located at 1 Town Hall Plaza, Valhalla, New York, and maliciously prosecuted on a misdemeanor information charging obstructing governmental administration in the second degree and disorderly conduct.

9.     Plaintiff was arraigned on these false criminal charges of obstructing governmental administration in the second degree and disorderly conduct on the sworn false statements of the defendant Paul J. Cusano of the Westchester County Department of Public Safety.

10.     On December 16, 2010, plaintiff was re-arraigned on a superceding misdemeanor information of the same charges based on the sworn false statements of defendant police officer Brian Bosan of the Westchester County Department of Public Safety.

11.     The aforesaid statements of defendants Cusano and  Bosan were sworn false statements made pursuant to Penal Law §210.45 making it a crime punishable as a class A misdemeanor to knowingly make such false statements.

12.     Plaintiff was unarmed, had committed no crime or offense when he was brutally and viciously attacked by defendant Bosan and the other white police officers who joined in the beating.

4

13.     Plaintiff was falsely arrested and detained in custody without a scintilla of evidence of any wrongdoing, probable cause, justification or excuse.

14.     Defendant Gagnon and John Does #1-30 witnessed these criminal events and actions of the defendant officers, but failed or refused to intervene, though they had the obligation and opportunity to do so.

15.     Plaintiff Joseph Garcia was kept handcuffed and in custody from approximately 1:40 A.M. until approximately 7:00 A.M. on October 17, 2010 when he was finally released by police.

16.     Plaintiff Joseph Garcia also suffered great trauma from witnessing the murder of his good friend, DJ Henry, who was killed by defendant Hess, as well as from the tasering of his friend Yves Delpeche, the assault on Daniel Parker, and from being tasered and assaulted and battered by defendants.

17.     This is a civil rights action seeking damages for the violations by defendants of plaintiff's rights, privileges, and immunities under the United States Constitution and the Civil Rights Act of 1871, 42 U.S. C. § 1983, and New York State common law.

18.     This is one of nine related lawsuits brought on behalf of college students who attempted to aid their friend DJ Henry after he was shot by defendant Hess and who were brutalized, some tasered and beaten, falsely arrested, maliciously prosecuted and/or threatened with the use of deadly physical force on October 17, 2010 by various members of different responding police forces including the police departments of defendant-municipalities.

**PARTIES**

19.     Plaintiff Joseph Garcia is a 23 year old Hispanic-American student who

5

resides in the County of Nassau, New York.

20.     Defendant, County of Westchester is a county in New York State, which, at all relevant times, employed Westchester County Department of Public Safety police officers, John Does # 1-10 (currently unidentified) who were at the scene of the shooting and who committed and/or participated in the wrongful acts alleged herein and/or acted in concert with the named defendants and/or did nothing to prevent defendants' illegal acts.  It may sue and be sued and, at all relevant times, employed defendant Bosan as a police officer.

21.     Defendant Village of Pleasantville, New York, is a municipality within the County of Westchester, State of New York. It may sue and be sued and, at all relevant times, employed defendant Hess as a police officer.

22.     Defendant Town of Mount Pleasant, New York, is a  municipality within the County of Westchester, State of New York. It may sue and be sued and, at all relevant times, employed defendant Beckley as a police officer.

23.     Defendant, Commissioner-Sheriff George N. Longworth, is and was at all relevant times employed by as the police commissioner of the County of Westchester and the head of the Westchester County Department of Public Safety and as such said defendant was acting as the agent, servant, and/or employee, and within the scope of his employment as such.

24.     Defendant Anthony Chiarlitti, was at all relevant times, the Village of Pleasantville Police Chief, acting in said capacity as the Village of Pleasantville's agent, servant, and/or employee, and within the scope of his employment as such.

6

25.     Defendant Louis Alagno, was at all relevant times, and is, the Mount Pleasant Police Chief, acting in said capacity as the Town of Mount Pleasant's agent, servant, and/or employee, and within the scope of his employment as such.

26.     Defendant Aaron Hess is a white police officer who, at all relevant times, was employed by the Village of Pleasantville, New York.  At all times relevant hereto, defendant Hess was acting in his capacity as the Village of Pleasantville's agent, servant, and employee, and within the scope of his employment as such.

27.     Defendant Ronald Beckley is a white police officer who, at all relevant times, was employed as a police officer for the Town of Mount Pleasant, New York. At all times relevant hereto, defendant Beckley was acting in his capacity as the Town of Mount Pleasant's agent, servant, and employee, and within the scope of his employment as such.

28.     Defendant Ronald Gagnon is a white police officer, who, at all relevant times, was employed as a police officer  for the Town of Mount Pleasant, New York.   At all times relevant hereto, defendant Gagnon was acting in his capacity as the Town of Mount Pleasant's agent, servant, and employee, and within the scope of his employment as such.

29.     Defendant Paul Cusano is a white police officer of the Westchester County Department of Public Safety for the County of Westchester. At all times relevant hereto, defendant Cusano was acting in his capacity as a police officer in the Westchester County Department of Public Safety of the County of Westchester, as their agent, servant, and employee, and within the scope of his employment as such.

30.     Defendant Brian Bosan is a white police officer of the Westchester County Department of Public Safety for the County of Westchester. At all times relevant hereto, defendant Bosan was acting in his capacity as a police officer in the  Westchester County Department of Public Safety of the County of Westchester, as their agent, servant, and employee, and within the scope of his employment as such.

31.     Defendant Russell W. Lowenstein is a white police lieutenant of the Westchester County Department of Public Safety for the County of Westchester. At all times relevant hereto, defendant Lowenstein was acting in his capacity as a supervisor in the  Westchester County Department of Public Safety of the County of Westchester, as their agent, servant, and employee, and within the scope of his employment as such.

32.     Defendant, Town of Mount Pleasant, is a town in New York State which, at all relevant times, employed Town of Mount Pleasant police officers, John Does #11-20 (currently unidentified) who were at the scene of the shooting and who committed and/or participated in the wrongful acts alleged herein and/or acted in concert with the named defendants and/or did nothing to prevent defendants' illegal acts.

33.     Defendant Village of Pleasantville is a village in New York State which at all relevant times employed Village of Pleasantville police officers, John Does # 21-30 (currently unidentified) who were at the scene of the shooting and who committed and/or participated in the wrongful acts alleged herein and/or acted in concert with the named defendants and/or did nothing to prevent defendants' illegal acts.

34.     Defendants Hess, Beckley, Gagnon, Cusano, Bosan and Lowenstein along with defendants John Does # 1-30 (all of whom were Mount Pleasant police

8

officers, Village of Pleasantville police officers, and Westchester Department of Public

Safety police officers) are collectively referred to herein as the "defendant officers".

## JURISDICTION AND VENUE

35.     This action arises under the Fourth and Fourteenth Amendments to the

United States Constitution, 42 U.S.C. § § 1983 and 1988 and New York State common

law.

36.     The jurisdiction of this Court is predicated upon 28 U.S.C. § § 1331,

1343(a)(3) and (4), 1367(a), and the doctrine of pendent jurisdiction.  Upon information,

and belief, all parties reside in New York State, and the amount in controversy exceeds

seventy-five thousand dollars ($75,000), exclusive of interest and costs.

37.     The acts complained of occurred in the Southern District of New York, and

venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

38.     Plaintiff demands trial by jury in this action.

## FACTUAL ALLEGATIONS

39.     Plaintiff, Joseph Garcia, came out of Finnegan's Restaurant and learned

that his friend DJ Henry had been shot by police bullets and was lying in the street and

bleeding.  He saw DJ on the pavement and attempted to approach him to aid him.  A

white police officer threatened him to "Get the f - - k back".  He complied and walked

back onto the sidewalk when he saw his friend, Desmond Hinds, face down and

handcuffed behind his back in the street.  Plaintiff asked Desmond "What happened?"

and Desmond replied "DJ was shot".  Plaintiff walked back toward DJ and he was again

stopped by a white police officer this time with the police officer's gun pointed directly at

him and he was told "Get the f- - k back". He feared for his life and walked back toward

the sidewalk. He saw Daniel Parker telling a white police officer that he knows CPR,

and he heard the white police officer tell Daniel Parker "Get the f- - k back or you'll be

next". He saw about five police officers grab Daniel Parker who was standing on the

sidewalk and slam him violently against a brick wall.

40.     Plaintiff again tried to walk towards DJ to assist him. Two white police

officers stopped him and threatened him to "Get the F - - k back." He went back onto

the sidewalk where he saw Yves Delpeche with his back against a brick wall with both

his arms up in the air and four officers point tasers and guns at Yves Delpeche. Three

police officers had tasers and one had a gun drawn. He tried to walk in front of Yves

Delpeche to protect him and about three to four police officers violently slammed his

head, hand and body into a brick wall and he was tasered in the lower back. The whole

left side of his body was slammed into the brick wall. He could hear students

screaming in fear. He was handcuffed behind his back. He felt police officers punching

him about the upper back. He was in shock and fearing for his life. The handcuffs

were put on too tight and he was thrown in the back of a police car. As he was taken to

the police car he saw DJ still lying on the pavement with DJ's legs trembling and no one

was giving him any medical aid.

41.     Plaintiff kept asking every police officer he saw about the condition of his

friend DJ, but they said they had no idea although they all knew he had died. Plaintiff

was fingerprinted and a mug shot taken.

42.     Plaintiff was taken to Westchester County jail and later given a police

appearance ticket later on October 17, 2010 at 6:10 A.M. charging "Obstruct

governmental administration 2nd degree" by defendant Russell W. Lowenstein of the Westchester County Department of Public Safety.

43.     Thereafter, plaintiff was wrongfully arraigned on November 4, 2010 at the local Criminal Court, Town of Mount Pleasant, located at 1 Town Hall Plaza, Valhalla, New York, and maliciously prosecuted on a misdemeanor information charging obstructing governmental administration in the second degree and disorderly conduct.

44.     Plaintiff was arraigned on these false criminal charges of obstructing governmental administration in the second degree and disorderly conduct on the sworn false statements of the defendant Paul J. Cusano of the Westchester County Department of Public Safety.

45.     On December 16, 2010, plaintiff was re-arraigned on a superceding misdemeanor information of the same charges based on the sworn false statements of defendant police officer Brian Bosan of the Westchester County Department of Public Safety.

46.     The aforesaid statements of defendants Cusano and Bosan were sworn false statements made pursuant to Penal Law §210.45 making it a crime punishable as a class A misdemeanor to knowingly make such false statements.

47.     Plaintiff was unarmed, had committed no crime or offense when he was brutally and viciously attacked by defendant Bosan and the other white police officers who joined in the beating.

48.     Plaintiff was falsely arrested and detained in custody without a scintilla of evidence of any wrongdoing, probable cause, justification or excuse.

49.     Defendants Gagnon and John Does #1-30 witnessed these criminal

11

events and actions of the defendant officers, but failed or refused to intervene, though they had the opportunity and obligation to do so.

50.   Plaintiff Joseph Garcia was kept handcuffed and in custody from approximately 1:40 A.M. until approximately 7:00 A.M. on October 17, 2010 when he was finally released by police.

51.   Plaintiff Joseph Garcia also suffered great trauma from being tasered, beaten, falsely arrested and maliciously prosecuted and from witnessing the murder of his good friend, DJ Henry, who was killed by defendant Hess, as well as from the tasering of his friend Yves Delpeche and the assault on Daniel Parker.

52.   Prior to this incident, Westchester County had already been placed on notice that its police officers had exhibited a pattern and practice of excessive and unlawful use of force and deadly physical force on racial minorities; and that it had to train its officers on justification and the lawful use of force, as well as on diversity, racial bias and racial profiling.

53.   The Westchester County Police Academy trains all police officer recruits for each of the forty-three (43) separate municipal police departments within Westchester County.

54.   However, in-service training typically occurs within the respective police departments and is delivered by their own personnel.

55.   As a result there are forty-three (43) different in-service training programs operating within the County of Westchester.

56.   Therefore, within the County of Westchester, there exists no uniform "use of force training" program, lessons, or materials used to instruct police officers on the

proper use of physical and deadly physical force (as defined in the Article 35 of the New York State Penal Law).

57.     On or about December 3, 2005, a Yonkers resident and high school basketball star, Dequan Massey, was arrested when he was helping his mother, Dara Massey, put out old unwanted furniture to be picked up by sanitation.

58.     Dequan Massey was charged with "attempted illegal dumping".   When his mother, Dara Massey, plead with the police to let her son go, an officer punched her in her face and she was beaten by five police officers who falsely arrested her.  Upon information and belief, Dara Massey was found "not guilty".

59.     On or about March 3, 2007, Irma Marquez, a 44-year-old Latina and a resident of Westchester County, suffered severe injuries in a Yonkers bar at the hands of the Yonkers Police Department.

60.     Ms. Marquez alleged in her federal civil complaint that at approximately 2:00  A.M., Yonkers police were called to LaFonda Bar in Yonkers to respond to a report that a woman, Ms. Marquez's niece, was unconscious and in need of medical assistance.  In her Federal complaint filed against the officers she alleged that when she leaned over to observe the paramedics assisting her niece, an officer pinned her arms to her side, lifted her off the floor and "drove her body, face first, into the ceramic tile floor of the restaurant. "

61.     Officer Christopher Ridley, a 23-year-old African-American off-duty police officer for the City of Mount Vernon, was shot and killed by white police officers on January 25, 2008.

62.     Stanley Ridley (the father of Officer Ridley) filed a Federal civil complaint

on April 10, 2009 against Westchester County District Attorney Janet DiFiore, four (4) on duty police officers, Commissioner Thomas Belfiore, Medical Examiner Millard Hyland, County Executive Andrew Spano, and the County of Westchester.

63.     Felita Rucker-Bouche (the mother of Officer Ridley) filed a Federal civil complaint on April 20, 2009 against Westchester County, Westchester County Department of Public Safety, the four (4) police officers, the City of Mount Vernon, the City of White Plains and Volunteers of America- Greater New York, Inc.

64.     Stanley Ridley alleged that Officer Olivieri shot his son, Officer Ridley, at point blank range above his left eye after Officer Ridley had fallen from the earlier shots.  The medical report indicated that powder burns were left on Officer Ridley's forehead indicating a close range kill type of shooting.

65.     Stanley Ridley described the killing of his son as " . . . a self-evidently racist murder of an African-American police officer by a Caucasian county police officer."  The Ridley complaint alleges racial animus: " .. . The murder of Officer Ridley by Oliveri, a Caucasian apparently motivated by racial animus, was not justifiable, but instead was a brutal execution."

66.     On February 3, 2010, Sergeant Kenneth Kissiedu, an African-American 16 year veteran of the New York City Police Department was assaulted by two white Yonkers police officers, arrested and charged with Obstruction of Governmental Administration.

67.     Sergeant Kissiedu, was a Yonkers resident, and was on his way to the Bronx when he stopped at a Chase ATM at 10:42 P.M.  Two white police officers came upon the scene and yelled to him, "Yo, yo, yo, yo."

68.     Sergeant Kissiedu responded to the officers "Yo is not my name." He was then assaulted on the spot and falsely arrested.

69.     On September 16, 2011, a jury found NYPD Sergeant Kissiedu "not guilty" of all charges brought against him by the Yonkers Police Department and the Westchester County District Attorney's Office.

70.     The U.S. Department of Justice has an ongoing investigation into the use of excessive force by Yonkers police officers according to The Journal News, June 1, 2009.

71.     Damon K. Jones, director of the Westchester Chapter of the National Black Police Association stated: "I really believe the D.A.'s office needs to step up and look into police misconduct, not just in Yonkers, but throughout Westchester County." The Journal News, June 1, 2009.

72.     Damon K. Jones also said on March 14, 2010 "Police brutality and misconduct are an ongoing occurrence in the poor Black and Latino communities in Westchester County. The Westchester NBPA considers this brutality and misconduct police CRIMINALITY."

73.     Following the shooting death on January 25, 2008, of police officer Christopher Ridley, by a white county police officer, a Panel to Review Use of Force Training (The "Panel") was commissioned by then Commissioner-Sheriff Thomas Belfiore of the Westchester County Department of Public Safety to "objectively and critically examine, assess and make necessary recommendations concerning "use of force" training conducted at, and under the direction of, the Westchester County Police Academy.

15

74.     On May 9, 2008, the Panel issued its "Final Report of the Panel" ("Final Report of the Panel") on their review of the "use of force" training at the Westchester County Police Academy.

75.     The purpose of the Panel was to undertake a comprehensive review of "use of force" training of any type involving the deployment of any type of physical force by police officers in order to enhance the overall level of public safety in Westchester County.

76.     The above referenced Final Report of the Panel was made public two years and five months prior to the shooting death of DJ Henry and the brutality inflicted on numerous other students present and attempting to aid and comfort their fallen friend and teammate.

77.     The scathing Final Report of the Panel revealed gross inadequacies in both recruit training in use of force as well as in-service training on use of force throughout all the various Westchester County police departments.

78.     Thereby the Final Report of the Panel placed the defendants, County of Westchester, Village of Pleasantville, New York, Town of Mount Pleasant, Commissioner-Sheriff George N. Longworth, Village of Pleasantville former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno, on notice that deficiencies in police training in use of force existed and need addressed and corrected for the safety and welfare of the public.

79.     The Final Report of the Panel contained "Recommendations Regarding Guidelines, Policies and Available Resources in Use of Force Training".

80.     The Final Report of the Panel resulted in specific "Recommendations

16

Regarding Recruit Training in Use of Force".

81.    The Final Report of the Panel resulted in specific "Recommendations Regarding In-Service Training in Use of Force".

82.    Upon information and belief, although the Panel recommended immediate implementation regarding many of these recommendations, defendants  County of Westchester, Village of Pleasantville, New York, Town of Mount Pleasant, Commissioner-Sheriff George N. Longworth, Village of Pleasantville former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno, have failed to do so, thereby continuing to enforce, encourage and sanction a policy, practice and/or custom of illegal and unconstitutional use of police force and false arrest, particularly against racial minorities.

83.    Defendants County of Westchester, Village of Pleasantville, New York, Town of Mount Pleasant, Commissioner-Sheriff George N. Longworth, Village of Pleasantville former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno, acted with a callous, reckless and deliberate indifference to Yves Delpeche' rights in that it failed to adequately discipline, sanction, train, retrain, investigate, supervise or otherwise direct police officers concerning the rights of citizens, in particular racial bias/ profiling, diversity, and use of force, thereby causing the defendant officers in this case to wrongfully taser, arrest and maliciously prosecute plaintiff.

84.    The excessive use of force on plaintiff, the battery, the threatened imminent use of deadly physical force by pointing a loaded gun at plaintiff's face, tasering him, the false arrest, and the restraint, detention and prosecution lacked any

lawful basis and probable cause, and were done maliciously, falsely, and in bad faith. The denial of immediate medical care lacked lawful basis and was done maliciously, and in bad faith.  Defendants acted deliberately and in wanton and reckless disregard for the rights and safety of plaintiff.

85.    As a result of defendants' conduct described above, including the unlawful use of excessive force, the violent assault, the threats of imminent use of deadly physical force by placing a loaded gun to plaintiff's face, restraining, falsely arresting and denying immediate medical care to plaintiff, malicious prosecution, plaintiff suffered serious physical and emotional injury, pain and suffering, shock, trauma, fear of impending death, loss of enjoyment of life, post traumatic stress syndrome, emotional distress, mental anguish, humiliation and embarrassment, reputational injury, educational costs, medical costs, legal costs, and other losses.

86.    Within ninety days after the claims alleged in this Complaint arose, a written notice of claim was served upon defendants Mount Pleasant, Village of Pleasantville, New York, and the County of Westchester.  A second Notice of Claim was served on these defendants within 90 days of dismissal of the criminal charges on March 24, 2011.  At least thirty days have elapsed since the service of the notices of claim, and adjustment or payment of the claims has been neglected or refused.  This action has been commenced within one year and ninety days after the happening of the event upon which the claim is based.

### FIRST CAUSE OF ACTION
42 U.S.C. § 1983
(Against the defendant officers)

87.    Plaintiff repeats and realleges the foregoing paragraphs as if the same

were fully set forth at length herein.

88.     By the above, and by arresting plaintiff without probable cause, using excessive force against him, assaulting him, unreasonably seizing him, denying him immediate medical care, maliciously prosecuting him, and/or failing to intervene to prevent this conduct, the defendant officers deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

89.     Defendants acted under pretense and color of state law and in their individual and official capacities and/or within the scope of their respective employments with Town of Mount Pleasant, Village of Pleasantville, New York,  and County of Westchester.   Said acts by the defendants were beyond the scope of their jurisdiction, without authority of law, and an abuse of their powers, and said defendant officers acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by 42 U.S.C. §1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

90.     As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

### SECOND CAUSE OF ACTION
Assault and Battery
(Against All Defendants)

91.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

19

92.     Defendants, their officers, agents, and/or servants, who threatened plaintiff with a gun, tasered him and slammed him against a brick wall, attacked and viciously beat him, were acting within the scope of their employment, and intentionally, willfully, and maliciously assaulted and battered plaintiff.

93.     Defendants, their officers, agents, and/or servants, acted in a hostile and offensive manner, with the intention of causing fear, harm and apprehension to plaintiff.

94.     Defendants, County of Westchester, Village of Pleasantville, New York, Town of Mount Pleasant, New York, as the employers of the defendant officers, are responsible for their wrongdoing under the doctrine of respondent superior.

95.     As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

### THIRD CAUSE OF ACTION
False Arrest and False Imprisonment
(Against All Defendants)

96.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

97.     By the actions described above, the defendants falsely arrested, falsely imprisoned and detained plaintiff without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so and/or witnessed and failed to intervene in his false arrest and detention despite the obligation and opportunity to do so. The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiff and violated his common law rights guaranteed to him by the laws of the State of New York.

98.     Defendants, County of Westchester, Village of Pleasantville, New York,

Town of Mount Pleasant, New York,  as the employers of the defendant officers are

responsible for their wrongdoing under the doctrine of respondent superior.

99.     As a direct and proximate result of the misconduct and abuse of authority

detailed above, plaintiff sustained the damages hereinbefore alleged.

### FOURTH CAUSE OF ACTION
(Violation of 42 U.S.C. §1983 Against County of Westchester, Village of Pleasantville,
New York,  Town of Mount Pleasant,  Commissioner-Sheriff George N. Longworth,
Village of Pleasantville former Police Chief Anthony Chiarlitti, Town of Mount Pleasant
Police Chief Police Louis Alagno)

100.    Plaintiff repeats and realleges the foregoing paragraphs as if the same

were fully set forth at length herein.

101.    Defendants, County of Westchester, Village of Pleasantville, New York,

Town of Mount Pleasant, New York, Commissioner-Sheriff George N. Longworth,

Village of Pleasantville former Police Chief Anthony Chiarlitti, Town of Mount Pleasant

Police Chief Police Louis Alagno,  have violated the plaintiff's rights, privileges and

immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the Fourth and

Fourteenth Amendments to the US Constitution, and Title VI of the Civil Rights Act of

1964, 42 U.S.C. §2000(d), et seq., ("Title VI "), and the Constitution and laws of the

State of New York.

102.    Said defendants have implemented and are continuing to enforce,

encourage and sanction a policy, practice and/or custom of unconstitutional excessive

use of force, false arrests and malicious prosecution of county residents, including

plaintiff, by their various police departments without justification, probable cause or due

21

process required under the Fourth and Fourteenth Amendments.

103.   In addition, this pattern and practice of unconstitutional  excessive use of force, false arrests and malicious prosecution by defendants, they have often used, and continued to use, race and/or national origin, not probable cause as the determinative factors in deciding to abuse individuals in violation of the Equal Protection Clause of the Fourteenth Amendment.  The victims of such racial and national origin profiling are principally Black and Latino males.

104.   The defendants widespread constitutional abuses have flourished as a result of, and are directly and proximately caused by, policies, practices and/or customs devised, implemented and enforced by the County of Westchester, Village of Pleasantville, New York,  Town of Mount Pleasant, New York,  Commissioner-Sheriff George N. Longworth, Village of Pleasantville Former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno.

105.   Defendants have acted with deliberate indifference to the constitutional rights of those who would come into contact with their police officers by:  (a) failing to properly screen, train, re-train and supervise their officers;  (b) failing to adopt and implement the recommendations regarding use of force training in the Final Report of the Panel, dated May 9, 2008;  (c) inadequately monitoring their officers and their arrest practices;  (d)  failing to sufficiently discipline their officers who engage in constitutional abuses;  and (e) ratifying and failing to rectify these unconstitutional practices.

106.   As a direct and proximate result of the defendants failures to screen, train, re-train and supervise its officers, numerous citizens have been subjected to unlawful use of force, false arrests, illegal searches and seizures, and malicious prosecutions,

many times simply because of their race, including the plaintiff.

107.   The defendants' widespread abuses are also a direct and proximate result of their failures to properly and adequately monitor, discipline and take necessary corrective action against their officers who engage in, encourage or conceal unconstitutional practices. Among other things, these defendants knowingly, deliberately and recklessly have failed:

(a)   to take appropriate disciplinary action and necessary corrective measures against officers who have engaged in excessive use of force and/or unlawful arrests without probable cause;

(b)   to adequately monitor officers who have incurred a substantial number of civilian complaints, even in instances where the number of complaints should have triggered monitoring under established departmental guidelines;

(c)   to devise and implement appropriate oversight, disciplinary and remedial measures in the face of extensive evidence of police brutality and false arrest being made without probable cause by officers;

(d)   to institute a formalized process for the review and analysis of all "Use of Force Reports" that are prepared by its personnel, specifically for the identification of tactical issues that need to be included into future training courses;

(e)   to convene an administrative panel to review firearm discharges and deadly physical force incidents;

(f)   to take sufficient corrective and remedial action against its officers who provide fabricated, false, or impermissible justifications for arrests; and

(g)   to take sufficient corrective, disciplinary and remedial action to combat the

23

so-called "blue wall of silence," wherein its officers regularly conceal or fail to report

police misconduct, *inter alia,* in sworn testimony, official reports, statements to the

Special Investigations Unit, and in public statements.

108.   At all times material to this complaint, defendants had in effect *de facto*

policies, practices and customs that were a direct and proximate cause of the

unconstitutional conduct committed herein in that its police officers were permitted to

engage in racial profiling in exercising their police powers in targeting its minority victims

for police brutality and illegal arrest without probable cause and in failing to ensure that

laws are enforced impartially by its members assigned to patrol duties.

109.   These policies, practices and customs include, *inter alia*: *de facto*

discrimination by officers who may be influenced by stereotypes resulting in race based

false arrest and imprisonments; failure to enact and enforce a clear policy for the police

providing that race, ethnicity, and national origin may not be considered at all by police

members in exercising police discretion while investigating criminal acts; failure to

ensure that police officers exercise reasoned discretion during criminal investigations; in

ratifying police brutality and misconduct and false arrests, and thereby sending a

message to its police force that unlawful conduct may be committed with impunity.

110.   In addition, defendants, having conducted studies which identified trends

of racial profiling, use of excessive force, and illegal arrests, yet took no or inadequate

measures to address, remedy and/or minimize such patterns; failed to conduct proper

analysis of police data to discern unlawful patterns about individual arrests, particularly

about the race and ethnicity of citizens arrested and to use such information to institute

corrective measures;  failed to make broader assessment of the circumstances of false

24

arrests; undertook no procedure for identifying lessons learned in the review process so that it may improve training and introduce more effective police practices;  failed to hold those wrongdoers accountable; in the ongoing lack of transparency regarding police who engage in unlawful practices including false arrests particularly of African-American males and other minorities;  failed to put in place adequate investigation and review processes;  in the inadequate internal review process in instances where police commit brutality, and false arrests;  in the failure to adequately scrutinize police arrest practices; in the failure to properly analyze statistics concerning of use of force and occurrences of false arrests which would suggest significant racial disparities in persons brutalized and falsely arrested;  in the failure to aggregate and analyze statistical data related to brutality and false arrest incidents which should include a wide range of facts including the race of persons falsely arrested;  in the failure to assess false arrests from a procedural and training perspective and impose discipline;  in targeting African-American males as victims of police brutality and false arrests.

111.   As a result of the foregoing, plaintiff was caused to suffer serious personal injuries, pain and suffering, trauma, a concussion and post concussion syndrome, and other bodily injuries, fear of impending death, post traumatic stress disorder, shock, loss of enjoyment of life, violation of his civil, constitutional and human rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to his reputation and standing within his community.

## FIFTH CAUSE OF ACTION
(42 U.S.C. § 1983 - Violations of the Equal Protection Clause)

112.   Plaintiff repeats, reiterates and realleges each and every allegation

25

contained in   preceding paragraphs as if set forth at length herein.

113.   Acting under color of state law, defendants have applied their arrest practices, including unlawful use of excessive force, lack of probable cause and the use of false arrest to cover up for their misconduct, against plaintiff, an African-American male and similarly situated individuals in an intentionally discriminatory and race-based manner.  Defendants have focused use of illegal arrest practices without warrant or probable cause in African-American and Latino communities.

114.   Defendants have acquiesced in, ratified and failed to check widespread violations of the constitutional rights of citizens, including plaintiff to be free from excessive force and unreasonable search and seizure because of his race.

115.   These constitutional abuses were and are directly and proximately caused by policies, practices and/or customs devised, implemented, enforced, encouraged, and sanctioned by the defendants, including: (a) targeted implementation of warrantless arrests without probable cause in communities of color; and (b) the discriminatory failure to adequately and properly screen, train, re-train, monitor, discipline and supervise its officers.

116.   As a direct and proximate result of defendants' practices, plaintiff was deprived of his right to Equal Protection of the laws under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

### SIXTH CAUSE OF ACTION
(Claims Under Title VI of the
Civil Rights Act of 1964, 42 U.S.C. §2000(d), *et seq.*
Against the Municipal Defendants)

117.   Plaintiff repeats, reiterates and realleges each and every allegation

contained in   preceding paragraphs as if set forth at length herein.

118.   The law enforcement activities described in this complaint have been funded, in part, with federal funds.

119.   Discrimination based on race in the law enforcement activities and conduct described herein are prohibited under 42 U.S.C. § 2000(d), *et seq.* The acts and conduct complained of herein by the defendants were motivated by racial animus, and were intended to discriminate on the basis of race and/or had a disparate impact on minorities, particularly Blacks and Latinos.

120.   As a direct and proximate result of the above mentioned acts, the plaintiff has suffered injuries and damages and has been deprived of his rights under the civil rights laws.

### SEVENTH CAUSE OF ACTION
Negligent Hiring, Training, Discipline, Supervision and Monitoring and Retention of Employment Services (Against defendants County of Westchester, Village of Pleasantville, New York, Town of Mount Pleasant,  Commissioner-Sheriff George N. Longworth, Village of Pleasantville former Police Chief Anthony Chiarlitti, Town of Mt. Pleasant Police Chief Police Louis Alagno,  )

121.   Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

122.   Defendant, County of Westchester, through its Department of Public Safety, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff under the same or similar circumstances, a reasonable, prudent, and careful person would have anticipated that an injury to plaintiff or to those in a like situation would probably result from this conduct.

123.   Defendant Village of Pleasantville, New York, through its police

27

department, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff. Under the same or similar circumstances, a reasonable, prudent, and careful person would have anticipated that an injury to plaintiff or to those in a like situation would probably result from this conduct.

124.   Defendant Town of Mount Pleasant, New York, through its police department, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff. Under the same or similar circumstances, a reasonable, prudent, and careful person would have anticipated that an injury to plaintiff or to those in a like situation would probably result from this conduct.

125.   Upon information and belief, the defendant officers were unfit and incompetent for their positions as police officers.

126.   Upon information and belief, defendants County of Westchester, Village of Pleasantville, New York,  Town of Mount Pleasant, New York,  Commissioner-Sheriff George N. Longworth, Village of Pleasantville Former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno, knew or should have known through the exercise of reasonable diligence that the defendant officers were dangerous.

127.   Upon information and belief, the defendants County of Westchester, Village of Pleasantville, New York,  Town of Mount Pleasant, New York,  Commissioner-Sheriff George N. Longworth, Village of Pleasantville Former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno, negligence in hiring, training, re-training, supervising, monitoring, disciplining, and retaining the  defendant officers proximately caused plaintiff's significant physical and mental injuries.

128.   Upon information and belief, because of defendants County of

Westchester, Village of Pleasantville, New York,  Town of Mount Pleasant, New York,

Commissioner-Sheriff George N. Longworth, Village of Pleasantville former Police Chief

Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno, negligent

hiring, training, re-training, discipline, supervision, monitoring and retention of the

aforementioned defendant officers, plaintiff incurred significant physical and mental,

injuries.

**EIGHTH CAUSE OF ACTION**
Negligent Denial of Medical Care
(Against All Defendants)

129.   Plaintiff repeats and realleges the foregoing paragraphs as if the same

were fully set forth at length herein.

130.   Defendants owed a duty of care to plaintiff.

131.   The defendant officers breached that duty of care by unreasonably

denying plaintiff immediate medical care for his injuries.

132.   As a direct and proximate result of this unlawful conduct, plaintiff sustained

the damages hereinbefore alleged.

133.   All of the foregoing occurred without any fault or provocation by plaintiff.

134.   Defendants, the County of Westchester, Village of Pleasantville, New York,

Town of Mount Pleasant, New York, as the employers of the defendant officers, are

responsible for their wrongdoing under the doctrine of respondent superior

**NINTH CAUSE OF ACTION**
Intentional/Reckless Infliction of Emotional Distress
(Against All Defendants)

135.   Plaintiff repeats and realleges the foregoing paragraphs as if the same

were fully set forth at length herein.

136.   Defendants Hess and Beckley intentionally shot at and into DJ Henry's vehicle without cause, killing plaintiff's close friend while plaintiff witnessed DJ Henry lying on the ground bleeding.  This conduct was extreme and outrageous.

137.   Defendants officers misconduct in threatening plaintiff with deadly physical force by pointing a gun directly at him, tasering and beating him,  was extreme and outrageous.

138.    As a result of defendants actions against plaintiff and his friends, he suffered extreme and severe emotional distress.

139.   Defendants knew that such distress was substantially certain to result from their conduct or, at a minimum, were done in disregard of a substantial probability of causing severe emotional distress.

140.   Defendant County of Westchester is responsible for the wrongdoing of its agent, servants and/or employees, under the doctrine of respondent superior.

141.   Defendant Village of Pleasantville, New York, is responsible for the wrongdoing of its agent, servants and/or employees, under the doctrine of respondent superior.

142.   Defendant Town of Mount Pleasant is responsible for the wrongdoing of its agent, servants and/or employees, under the doctrine of respondent superior.

143.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## TENTH CAUSE OF ACTION
(For Malicious Prosecution)

144.   Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

145.   Defendants, their agents, servants and/or employees, maliciously

prosecuted plaintiff without just right or grounds therefore.

146. That the plaintiff was wholly innocent of said charges and was forced by defendant to submit to Court proceedings.

147. Plaintiff was arraigned on the initial misdemeanor information; thereafter re-arraigned on a superceding misdemeanor information on December 16, 2010, and subjected to criminal prosecution.

148. Defendants, their agents, servants and/or employees commenced the criminal proceeding against plaintiff because of a wrong or improper motive other than a desire to see the ends of justice served.

149. Thereafter and on March 24, 2011 all criminal charges wrongfully lodged against plaintiff were dismissed in full by the Hon. Robert J. Ponzini declaring:

> "These gentleman who came in here presumed innocent will leave here innocent. And that is what I been elected to do and that is my jurisdiction, and that's what I'm going to do today."

150. That the defendants, their agents, servants and/or employees commenced a criminal proceeding against the plaintiff; that there was a termination of the proceeding in favor of the plaintiff; that there was an absence of probable cause for the criminal proceeding and that there was actual malice by the defendants, its agents, servants and/or employees, against the plaintiff.

151. That by reason of the said false arrest, detention and malicious prosecution plaintiff was caused to suffer great pain in both mind and body; subjected to great indignities, humiliation and ridicule; plaintiff was charged and prosecuted before the public for crimes which he did not commit; and greatly injured in his credit and circumstances; suffered a loss of education and educational opportunities; expenses for

31

legal and other professional services.

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(A)     an order declaring that defendants' conduct violated plaintiff's rights as guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution;

(B)     an order granting compensatory damages in an amount to be determined at trial;

(C)     an order awarding punitive damages against defendants Commissioner-Sheriff George N. Longworth, Village of Pleasantville Former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno,  Hess, Beckley, Gagnon, Bosan and Lowenstein, and the unknown defendant police officers who assaulted and battered plaintiff in an amount to be determined at trial;

(D)     an order directing defendants County of Westchester, Village of Pleasantville, New York,  Town of Mount Pleasant, New York, Commissioner-Sheriff George N. Longworth, Town of Mount Pleasant Police Chief Louis Alagno, to adopt and implement the "Recommendations Regarding Guidelines, Policies and Available Resources in Use of Force Training", "Recommendations Regarding Recruit Training in Use of Force" and "Recommendations Regarding In-Service Training Use of Force" contained in the Final Report of the Panel to Review Use of Force Training at the Westchester County Police Academy issued May 9, 2008;

(E)     an order appointing a Special Master to oversee, monitor and insure the implementations contained in the Final Report of the Panel;

(F)     an order awarding plaintiff reasonable attorneys' fees and costs under

42 U.S.C. § 1988; and

     (G)    an order awarding such other and further relief as the Court may deem just and proper, together with attorneys' fees, interest, costs and disbursements of this action.

Dated: Lake Success, New York
       October 14, 2011

                Law Offices of Bonita E. Zelman

                By: *Bonita E. Zelman Esq.*
                    Bonita E. Zelman, Esq. (BEZ4890)
                Attorney for plaintiff Joseph Garcia
                2001 Marcus Ave., Suite S-150
                Lake Success, N.Y. 11042
                516-616-0707